Thomas N. McCormick (SBN 325537)
Emily A. Papania (SBN 325027)
VORYS SATER SEYMOUR AND PEASE LLP
4675 MacArthur Court
Suite 700
Newport Beach, CA 92660
Telephone: (949) 526-7900
Facsimile: 949 526-7901
Email:   tnmccormick@vorys.com
              eapapania@vorys.com

Attorneys for Defendant
ZALE DELAWARE, INC.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILVIA ALFARO, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANTER BY PIERCING PAGODA, an Ohio corporation; PIERCING PAGODA, an Ohio corporation; ZALE DELAWARE, INC., a Delaware corporation; AMANDA HORN, an individual' and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.<br><br>**DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF REMOVAL**<br><br>Action Filed:        December 21, 2021 |

       TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO SILVIA ALFARO

AND HER ATTORNEYS OF RECORD:

       PLEASE TAKE NOTICE that Defendant Zale Delaware, Inc. ("Zale") hereby removes

the above-captioned action from the Superior Court for the State of California, County of

Orange, to the United States District Court for the Central District of California, pursuant to 28

U.S.C. §§ 1332(d) and 1446.

As required by 28 U.S.C. § 1446(d), Zale will file in Superior Court, and serve upon Plaintiff and her counsel of record a Notice to State Court of Removal of Civil Action to Federal Court (with these removal papers attached).

In support of this Notice of Removal, Zale states the following:

**PROCEDURAL HISTORY**

1. Plaintiff filed her Complaint, captioned *Silvia Alfaro, an individual and on behalf of all others similarly situated v. Banter by Piercing Pagoda, an Ohio corporation; Piercing Pagoda, an Ohio corporation; Zale Delaware, Inc., a Delaware Corporation; Amanda Horn, an individual; and Does 1 through 100, inclusive*, Case No. 30-2021-01237686-CU-OE-CXC in the Superior Court for the State of California for the County of Orange (the "State Court Action") on December 21, 2021. A true and correct copy of the Complaint is attached as **Exhibit 1** ("Complaint").

2. The Complaint was served on Zale on January 21, 2022.

3. Zale filed an answer to Plaintiff's Complaint on February 16, 2022 ("Answer"). A true and correct copy of Zale's Answer is attached hereto as **Exhibit 2**.

**STATEMENT OF JURISDICTION**

4. This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S.C. § 1332(d). In relevant part, CAFA grants district courts original jurisdiction over civil class actions filed under federal or state law in which any member of a class of 100 or more putative class members is a citizen of a state different from any defendant and the amount in controversy for the putative class members in the aggregate exceeds $5,000,000, exclusive of interest and costs. CAFA authorizes removal of such actions pursuant to 28 U.S.C. § 1446. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice of Removal.

5.  The Act applies to actions that were "commenced" on or after February 18, 2005.  Because the State Court Action was filed on December 21, 2021, it was "commenced" on or after February 18, 2005, and removal is proper under the Act.

## TIMELINESS OF REMOVAL

6.  Pursuant to 28 U.S.C. § 1446(b), Zale filed this removal within 30 days after receipt of service of the Complaint and Summons (January 21, 2021).  *See* **Exhibit 1.**

## VENUE

7.  Plaintiff originally filed this action in the Superior Court for the State of California, County of Orange.  Venue is thus proper in this district, pursuant to 28 U.S.C. § 1441(a), because it encompasses the county in which this action is pending.

## PROCEDURAL REQUIREMENTS

8.  Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Zale are attached to this Notice of Removal.[1]  Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Superior Court for the State of California, County of Orange.

## DEFENSES

9.  The removal of this action to the Northern District of California does not waive Zale's ability to assert any defense to this action.

## REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

**A.  Plaintiff's Action is Pled as a Class Action**

10. Under CAFA, "'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by one or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).

---

[1] In conformity with the requirement of 28 U.S.C. § 1446(a), that copies of all process, pleadings and orders served upon Zale in the State Court Action be included with this notice of removal, the State Court Action case file, other than those documents already attached as Exhibits 1 and 2, is attached as **Exhibit 3**.

11. The State Court Action has been styled as a class action, pursuant to California Code of Civil Procedure section 382. *See* Complaint ¶ 1. Cal. Code of Civ. Pro. § 382 authorizes an action to be brought by one or more representative persons as a class action. *See* Cal. Code of Civ. Pro. § 382.

**B. The Proposed Class Contains at Least 100 Members**

12. Pursuant to 28 U.S.C. § 1332(d)(5)(B), district courts will have original jurisdiction over a class action case under CAFA if the number of members of the putative plaintiff class is not less than 100.

13. This requirement is met here. Plaintiff's Complaint proposes a class of "all current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class." Complaint ¶ 26. Members of the putative class will collectively be referred to as the "putative class members."

14. According to this proposed class definition, there are approximately 1,059 putative class members (all current and former non-exempt employees ("team members") employed by Zale at Piercing Pagoda locations in California during the alleged relevant period). *See* Declaration of Reginald Johnson ("Johnson Decl."), attached hereto as **Exhibit 4**, at ¶¶ 6. Thus, the size of the putative class is sufficient to meet the Act's requirement for removal to federal court.

**C. There is Diversity Between at Least One Putative Class Member and One Defendant**

15. The Act's minimal diversity requirement is satisfied, *inter alia*, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A); 1453(b). Minimal diversity of citizenship exists here because of Plaintiff and Zale.

16. Allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship. *Lew v. Moss*, 797 F.2d 747, 750-51 (9th Cir.

1986*); see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, *22 (E.D. Cal. 2008) (place of residence provides "prima facie" case of domicile).

17. Plaintiff is a resident of the State of California. Complaint ¶ 2. In addition, Plaintiff alleges that she was employed by Zale and that, at the time of her termination, she was employed in California. Complaint ¶¶ 2, 26. *See Lew* at 750 (holding plaintiff's place of employment can establish domicile for the purpose of diversity jurisdiction). Therefore, Plaintiff is a citizen of the State of California.

18. Conversely, Zale is not a citizen of California. For diversity purposes, a corporation is deemed a citizen of its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *See also Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (A corporation's "principal place of business" is "the place where a corporation's officers direct, control, and coordinate the corporation's activities.").

19. Zale is a corporation organized under the laws of the State of Delaware. Its principal place of business is in Akron, Ohio. Johnson Decl. ¶ 3. For purposes of diversity jurisdiction, therefore, Zale is a citizen of Delaware and Ohio.

20. Banter by Piercing Pagoda and Piercing Pagoda are not separate, legal entities, but rather are "doing business as" names used by Zale at various times. Johnson Decl. ¶ 3. Moreover, Plaintiff (incorrectly) alleges that they are Ohio corporations. Complaint ¶¶ 3, 4.

21. The presence of Doe defendants in this case has no bearing on diversity with respect to removal. *See Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-691 (9th Cir. 1998); *see also* 28 U.S.C. § 1441(b) ("[f]or the purposes of removal…the citizenship of defendants sued under fictitious names shall be disregarded").

22. Accordingly, since Plaintiff is a citizen of a different stat than Zale, minimal diversity exists for federal jurisdiction under CAFA.  *See* 28 U.S.C. §§ 1332(d)(2)(A).[2]

**D.  The Amount in Controversy Exceeds $5,000,000[3]**

23. This Court has jurisdiction under CAFA, which authorizes the removal of class actions in which, among the other factors mentioned above, the amount in controversy for all class members exceeds $5,000,000.  *See* 28 U.S.C. § 1332(d).

24. The removal statute requires that a defendant seeking to remove a case to federal court must file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).

25. Plaintiff's Complaint is silent as to the total amount in controversy.  However, Plaintiff's failure to specify the total damages or other monetary relief sought does not deprive this Court of jurisdiction.  Rather, when the plaintiff fails to plead a specific amount of damages, the defendant seeking removal "must prove by a preponderance of the evidence that the amount in controversy requirement has been met." *See Rodriguez v. AT&T Mobility Servs.*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard.").

26. This burden is not onerous and does not obligate a removing defendant to "research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1204-1205 (E.D. Cal. 2008).  Rather, "[t]he 'ultimate inquiry' is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Id.*  (citing *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).

---

[2] The fact that Plaintiff named Amanda Horn as a defendant in addition to Zale and the non-legal entities Piercing Pagoda and Banter by Piercing Pagoda does not impact the analysis of minimal diversity for CAFA removal. Minimal diversity is established when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A); 1453(b).  As discussed herein, that standard is met by Plaintiff's California citizenship and Zale's Ohio and Delaware citizenship.

[3] Zale provides the following calculations only to demonstrate that the amount in controversy exceeds $5,000,000. Zale makes no admission of liability or damages with respect to any aspect of this case, nor does Zale waive its right to ultimately contest the proper amount of damages due, if any, should Plaintiff prevail with any of her claims.

1      In determining the amount in controversy for CAFA, all potential damages based on the

2      claims in the complaint, as well as attorneys' fees, are included. *See Campbell v. Vitran*

3      *Express, Inc.*, 471 Fed. App'x 646, 648 (9th Cir. 2012) (in measuring the amount in

4      controversy, a court "must assume that the allegations of the complaint are true and assume

5      that a jury will return a verdict for the plaintiff on all claims made in the complaint.")

6      (quotations and citations omitted).

7  27. The United States Supreme Court has held that "as specified in §1446(a), a defendant's notice

8      of removal need include only a plausible allegation that the amount in controversy exceeds

9      the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S.

10     81, 89 (2014).  Only if the plaintiff contests or the court questions the allegations of the notice

11     of removal, is supporting evidence required.  *See id.*  Otherwise, "the defendant's amount-

12     in-controversy allegation should be accepted" just as a plaintiff's amount-in-controversy

13     allegation is accepted when a plaintiff invokes federal court jurisdiction.  *Id.* at 87.

14 28. In establishing the amount in controversy, a removing party is entitled to make reasonable

15     assumptions.  *Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193, 1199 (9th Cir. 2015) ("[The

16     removing party] bears the burden to show that its estimated amount in controversy relied on

17     reasonable assumptions."); *see also Oda v. Gucci Am.*, Inc, 2015 U.S. Dist. LEXIS 1672, at

18     *10 (C.D. Cal. 2015) ("Where, as here, a plaintiff makes generalized allegations regarding

19     the frequency of violations, a defendant may calculate the amount in controversy based on

20     reasonable assumptions.").

21 29. Moreover, Congress intended that any uncertainty of the removability of an interstate class

22     action be resolved in favor of federal jurisdiction.  *See* Senate Judiciary Committee Report,

23     S. REP. 109-14, at 42 ("if a federal court is uncertain about whether 'all matters in

24     controversy' in a purported class action 'do not in the aggregate exceed the sum or value of

25     $5,000,000,' the court should err in favor of exercising jurisdiction over the case.").

26 30. In sum, Zale denies the validity and merits of Plaintiff's claims, the legal theories upon which

27     they are purportedly based, and the claims for monetary and other relief that flow from them.

1    Nevertheless, and notwithstanding Plaintiff's failure to allege the total amount of damages

2    claimed, the amount in controversy as alleged by Plaintiff in this case exceeds $5,000,000.

3                  **1)  Failure to Pay Lawful Wages Including Overtime**

4    31. Plaintiff's first cause of action is for the alleged failure to pay overtime compensation

5        pursuant to California Labor Code Sections 510, 558, and 1194.

6    32. Each non-exempt employee is entitled to be paid one and one–half times her regular rate of

7        pay for time worked in excess of eight (8) hours per workday and/or more than forty (40)

8        hours per workweek.  Cal. Lab. Code § 510.

9    33. Plaintiff pleads that "Plaintiff and Class Members, at times, worked for Defendants during

10        shifts that consisted of more than eight (8) hours in a workday and/or more than forty hours

11        in a workweek, and/or seven (7) consecutive workdays in a workweek without being paid

12        overtime wages for all hours worked."  Complaint ¶ 40.

13    34. This Court has routinely held that an assumption of one hour of unpaid overtime per week is

14        reasonable, particularly when the complaint alleges a pattern and practice of failing to pay

15        overtime wages.  *Danielsson v. Blood Ctrs. of the Pac.*, 2019 U.S. Dist. LEXIS 222539, at

16        *21 (N.D. Cal. Dec. 30, 2019) ("Courts in this circuit have held that an hour of unpaid

17        overtime per week is a reasonable estimate when the complaint alleges a pattern and practice

18        of failing to pay overtime wages.") (internal quotations omitted) (citing *Kastler v. Oh My

19        Green, Inc.*, 2019 U.S. Dist. LEXIS 185484 at *12 (N.D. Cal. Oct. 25, 2019) and *Arreola v.

20        Finish Line*, 2014 U.S. Dist. LEXIS 170464, at *7 (N.D. Cal. Dec. 9, 2014) ("Where, as here,

21        a proposed class includes all employees during the class period, and the plaintiff pleads that

22        an employer has a regular or consistent practice of violating employment laws that harmed

23        each class member, such an allegation supports a defendant's assumptions that every

24        employee experienced at least one violation once per week.")).

25    35. Plaintiff's complaint alleges that Zale maintained a policy and practice of failing to properly

26        pay overtime; therefore, Zale will assume one hour of unpaid overtime per week.

27

36. The average hourly rate of Zale's California non-exempt employees for the period of time from December 21, 2018 to the present is $17.13. Johnson Decl. ¶ 6. The overtime rate for this one hour of pay would therefore be $25.69 (1.5 x $17.13, rounded down to be conservative).

37. As specified above, for calculations purposes, Zale assumes 1 hour of unpaid overtime per week. There were 16,993 bi-weekly pay periods (or wage statements issued) for alleged putative class members during that same time period. *See* Johnson Decl. ¶ 8. Thus, that equals 33,986 hours of unpaid overtime (i.e., two for every two-week pay period/wage statement).

38. Multiplying the assumed hours of unpaid overtime by the average hourly overtime rate for the putative class, this cause of action puts **$873,100.34** in controversy (33,986 x $25.69).

### 2)   Failure to Provide Meal Periods and Permit Rest Breaks

39. In the third and fourth causes of action, Plaintiff alleges that she and the putative class members were not given proper meal and rest breaks. California Labor Code Section 226.7(b) establishes that an employee who does not receive a meal or rest period to which she is entitled shall be paid one hour of pay at her regular rate of compensation as premium pay. *See* Cal. Lab. Code 226.7(b). Plaintiff asserts that she is entitled to premium pay for missed meal and rest periods under Section 226.7 of the Labor Code. Complaint at Part (D) of "Prayer" Section.

40. Plaintiff fails to plead how often these lawful meal periods and/or rest breaks were allegedly not authorized or permitted by Zale.

41. However, numerous Courts, including this one, have held that assuming a 100% violation rate is permissible for determining the amount in controversy when a Complaint does not contain more detailed allegations that would suggest such an assumption is incorrect. *See, e.g., Mejia v. DHL Express (USA), Inc.*, 2015 U.S. Dist. LEXIS 67212, at *10 (C.D. Cal May 21, 2015) (using a 100% violation rate to calculate the amount in controversy where the plaintiff's complaint "does not contain any allegations that suggest a 100% violation rate is

an impermissible assumption."); *Muniz v. Pilot Travel Ctrs.*, 2007 U.S. Dist. LEXIS 31515, at *12-*13 (E.D. Cal. April 30, 2007) ("[P]laintiff includes no fact-specific allegations that would result in a … violation rate that is discernibly smaller than 100% . . . . Plaintiff is the master of her claims, and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought."); *see also Giannini v. Nw. Mut. Life Ins. Co.*, 2012 U.S. Dist. LEXIS 60143, at *11 (N.D. Cal. Apr. 30, 2012) (allegations of "routine" violations supported assumption of 100% violation rate).

42. Nonetheless, given Plaintiff's vague language in the Complaint, Zale will limit its assumption to two meal period violations and two rest break violations per work week, totaling four violations per workweek per team member.[4]  *See Lucas v. Michael Kors (USA) Inc.*, U.S. Dist. LEXIS 78510, at *11 (C.D. Cal. May 9, 2018) ("The Court agrees with Defendant MK that their assumed violation rate of 2 missed meal/rest break periods per workweek is reasonable…").

43. Additionally, Defendant will use the average hourly rate of the putative class to calculate the damages. *Sanchez v. Russell Sigler, Inc.*, 2015 U.S. Dist. LEXIS 55667, at *11 (C.D. Cal. April 28, 2015) ("Defendant's use of an average hourly wage was proper for determining the amount in controversy."); *Coleman v. Estes Express Lines*, Inc., 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010) ("it is preferable for defendants to calculate the average hourly wage based on the average wage of all class members." (internal citation and quotation marks omitted)).

44. The average hourly rate for Zale non-exempt team members working at Piercing Pagoda locations in California for the period of time from May 21, 2018 to the present is $17.13. *See* Johnson Decl. ¶ 6.  Additionally, there were 16,993 bi-weekly pay periods (or wage statements issued) during that same time period.  *See* Johnson Decl. ¶ 8.

---

[4] As noted throughout, Zale pays its associates biweekly.  Thus, this assumption will create eight violations per pay period.

45. As specified above, for calculations purposes, Zale assuming 2 meal and 2 rest break violations per week, or 4 meal and 4 rest violations per pay period/wage statement. Thus, that equals 135,944 alleged violations (8 violations x 16,993 pay periods/wage statements).

46. Multiplying the assumed meal break violations by the average hourly earnings for the putative class, the second and third causes of action places **$2,328,720.72** in controversy (135,944 x $17.13 average hourly wage).

### 3) Failure to Reimburse Business Expenses

47. Plaintiff's eighth cause of action alleges that Zale failed to indemnify and reimburse Plaintiff and class members for required business expenses in the discharge of their job duties. Complaint ¶ 91. Plaintiff specifically alleges that Zale did not reimburse employees for expenses related to their individual use of personal cell phones. Complaint ¶ 91.

48. California Labor Code Section 2802 requires an employer to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties…" California Lab. Code § 2802.

49. This Court has accepted, for purposes of calculating the amount in controversy, an estimate of 50% of employees' cell phone bill costs. *Anderson v. Starbucks Corp.*, 2020 U.S. Dist. LEXIS 245356, at *12-13 (N.D. Cal. Dec. 31, 2020) (reduction of bill cost by 50% was "reasonable basis for estimating an amount on [*sic*] controversy").

50. Plaintiff has not pled the amount of reimbursement allegedly unpaid, or the cost of her or any putative class member's cell phone bill. The United States Bureau of Labor Statistics reports that, as of the 2018-2019 years, the mean annual cost of cellular phone service in California was $1,299.07 (approximately $24.98 per week ($1,299.07 divided by 52)). *See* U.S. Bureau of Labor Statistics, "California: Quintiles of income before taxes, 2017-2018," https://www.bls.gov/cex/2018/research/income-ca.htm (last accessed Feb. 17, 2022).

51. The Court may take judicial notice of this governmental statistic. *See* Fed. R. Evid. 201(b)(2); *see also Castro v. ABM Indus.*, 2015 U.S. Dist. LEXIS 44887, at *2 n.1 (N.D. Cal. Apr. 2, 2015) (taking judicial notice of similar Bureau of Labor Statistics reports).

52. As discussed above, there are 16,993 biweekly pay periods/wage statements since December 21, 2018, or 33,986 workweeks, potentially at issue in this matter.   Assuming that reimbursement was owed for 50% of an employee's weekly cell phone cost ($12.49 per week), the resulting amount in controversy would be **$424,485.14** (33,986 workweeks x $12.49 per week).

### 4)  Failure to Timely Pay Wages During Employment

53. Plaintiff's seventh cause of action is for the failure to timely pay wages during employment, pursuant to California Labor Code Sections 204 and 210. Labor Code Section 204 provides that "labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month." Cal. Lab. Code § 204.

54. Plaintiff alleges that in the year before filing this complaint, Defendant "at times" did not pay Plaintiff and the putative class members in accordance with Section 204 of the California Labor Code. Complaint ¶ 85.

55. Plaintiffs alleges that the penalties for not complying with Labor Code Section 204 are $100 for each initial violation for each putative class member and $200 for each subsequent violation for each putative class member. Complaint ¶ 86; Cal. Lab. Code § 210.

56. During the time period beginning one year prior to the filing of the Complaint, there were 7,764 pay periods for 660 different putative class members.  Johnson Decl. ¶¶ 8–9.

57. As Plaintiff's complaint is silent as to how often Defendant did not pay Plaintiff and the putative class in accordance with Section 204 of the California Labor Code, it is reasonable to assume a 100% violation rate.  Nonetheless, Defendants will conservatively use a 25% violation rate, meaning that 1,941 wage statements would be impacted.

58. Thus, the proper measure of damages is $100 to each class member for the first violation they experienced, resulting in $66,000 in penalties for first statements ($100 x 660 class

members). The remaining 25% of pay periods (1,281) would allegedly represent subsequent violations paid at $200 per violation, for a total of $256,200 in penalties for subsequent violations ($200 x 1,281 pay periods).  Thus, in total, this claim places **$322,200.00** in controversy ($66,000 + $256,200).

### 5)  Failure to Timely Pay Wages Due at Termination

59. Plaintiff's fifth cause of action is for the failure to timely pay wages upon separation, pursuant to California Labor Code Sections 201, *et al*.  Each employee is entitled to be paid her normal wages for every day the wages are late, up to a 30 day maximum.  Cal. Lab. Code § 203.

60. Courts have routinely held that a 100% violation rate is reasonable.  Thus, Courts have held that calculating penalties for the full 30 day maximum is appropriate.  *See, e.g., Altamirano v. Shaw Indus.*, 2013 U.S. Dist. LEXIS 84236, at *34 (N.D. Cal. 2013) ("[A]warding penalties for the entire 30 pay [*sic*] period is reasonable."); *see also Rahmatullah v. Charter Communs.*, 2020 U.S. Dist. LEXIS 127235, *12 (C.D. Cal. July 15, 2020) ("The thirty-day maximum is supported by Plaintiff's complaint because Plaintiff seeks the maximum penalty, and Plaintiff's complaint contains broad and general allegations and does not contain limiting language.").

61. To calculate penalties owed, courts have held that it is reasonable to assume an eight-hour workday.  *See Altamirano*, 2013 U.S. Dist. LEXIS at *34; *see also Archuleta v. Avcorp Composite Fabrication, Inc.*, 2018 U.S. Dist. LEXIS 206495, at *14 (C.D. Cal. Dec. 6, 2018) (Defendant "conservatively estimate[ed] an eight-hour workday"); *see also Wheatley v. MasterBrand Cabinets, LLC*, 2019 U.S. Dist. LEXIS 26201, at *17 (C.D. Cal. Feb. 19, 2019).  As many putative class members were part-time team members, Zale assumes a workday that consists of four hours.

62. The applicable average daily wage here is $68.52 ($17.13 per hour x 4 hours per day).  Thus, if liability was established, each Class Member who has separated their employment would be entitled to $2,055.60 ($68.52 x 30 days).

63. Approximately 674 team members have separated their employment with Zale from December 21, 2018 until the present.

64. Given that there are approximately 674 putative class members who have separated their employment, $2,055.60 must be multiplied by 674, placing **$1,385,474.40** in controversy for this cause of action.

### 6) Failure to Provide Accurate Wage Statements

65. Plaintiff's sixth cause of action alleges that Zale failed to include all required information on the wage statements it provided to team members and thus failed to provide accurate wage statements in violation of California law.  Compl. ¶ 76.

66. California Labor Code Section 226(e) requires an employer to pay fifty dollars ($50.00) for the first pay period where a violation occurred and one-hundred dollars ($100.00) per employee for each violation in subsequent pay periods.  Violations are capped at a maximum of $4,000 per employee and the claims have a statute of limitations of one year. Cal. Lab. Code §§ 226(e), 340.

67.  Courts have held that a "Defendant may reasonably assume every wage statement contained at least one inaccuracy."  *Wheatley v. MasterBrand Cabinets, LLC*, 2019 U.S. Dist. LEXIS 26201, at *20.  Thus, it is proper to add penalties to each wage statement provided in the relevant time period.

68. During the time period beginning one year prior to the filing of the Complaint, 7,764 wage statements were issued to 660 different putative class members.  Johnson Decl. ¶¶ 8–9.

69. As Plaintiff's complaint is silent as to how many inaccurate wage statements were issued, and given the large number of wage statements issued to the putative class, it is reasonable to assume a 100% violation rate.

70. Thus, the proper measure of damages is $50 to each class member for the first violation they experienced, resulting in $33,000 in penalties for first statements ($50 x 660 class members).  The remaining 7,104 wage statements, then, would presumably represent second violations paid at $100 per violation, for a total of $710,400 in penalties for subsequent violations ($100

x 7,104 wage statements).   Thus, in total, this claim places **$743,400.00** in controversy ($33,000 + $710,400).

       **7) Attorneys' Fees**

71. Plaintiff seeks to recover attorneys' fees.  Complaint at Part (M) of "Prayer" Section.  Under CAFA, attorneys' fees are included in determining the amount in controversy, regardless of whether they are mandatory or discretionary. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998); *see also Dawsey*, 2015 U.S. Dist. LEXIS 93051 at *2-3, 7 (W.D. Wash. Jul. 16, 2015) (calculating both statutory and "reasonable" attorneys' fees to determine the amount in controversy under CAFA).  For class action settlements, the Ninth Circuit has found that 25% of the common fund is a reasonable attorneys' fees award. *See id.* at *7 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("benchmark" level for reasonable attorneys' fees in class actions in the Ninth Circuit is 25%)).

72. Therefore, "[i]f Defendant can establish by a preponderance of the evidence that the [amount in controversy is] at least $4 million dollars, the addition of twenty-five percent in attorneys' fees would necessarily meet the $5 million amount in controversy requirement under CAFA." *Garcia v. Wal-Mart Stores*, 2016 U.S. Dist. LEXIS 142807, *18 (C.D. Cal. Oct. 14, 2016) (citing *Garibay v. Archstone Communities LLC*, 539 Fed. App'x 763, 764 (9th Cir 2013)).

73. Here, as set forth above, there is "substantial, plausible evidence" that the amount in controversy in Plaintiff's first, third, fourth, fifth, sixth, seventh and eighth causes of action in the Complaint totals **$6,077,380.60**. A conservative and reasonable estimate of Plaintiff's attorneys' fees is **$1,519,345.15**, which is 25% of the total amount in controversy for these claims.   Thus, a conservative calculation of the amount in controversy, based on the allegations in Plaintiff's Complaint addressed herein and the data cited herein, is **$7,596,725.75**.  Even though this amount does not even include all of Plaintiff's claims, this amount exceeds the $5,000,000.00 threshold required by CAFA. *See* 28 U.S.C. § 1332(d).

1  74. Although Zale specifically denies Plaintiff's claims and denies Plaintiff is entitled to recover

2      any of the relief she seeks, it is clear from the allegations in the Complaint and the scope of

3      the relief sought that the amount in controversy exceeds the $5,000,000.00 jurisdictional

4      threshold of 28 U.S.C. § 1332(d).

5                                    **CONCLUSION**

6  75. Based on the foregoing, Zale respectfully requests that the Court remove the above-entitled

7      action to federal court.

8

9   Dated: February 18, 2022          Respectfully submitted,

10                                     /s/*Thomas N. McCormick*

11                                     Thomas N. McCormick
                                       VORYS SATER SEYMOUR AND PEASE LLP
                                       4675 MacArthur Court
12                                     Suite 700
                                       Newport Beach, CA 92660
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**PROOF OF SERVICE**

**STATE OF CALIFORNIA** )
                       )    **ss.**
**COUNTY OF ORANGE** )

I, John M. Upton, declare:

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 4675 MacArthur Court, Suite 700, Newport Beach, CA 92660.

On February 18, 2022, I served the document(s) described as **DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF REMOVAL** on all interested parties in said action as stated on the ATTACHED SERVICE LIST by delivery as described below:

☒      **BY EMAIL SERVICE** as follows:  By email or electronic transmission: I sent the document(s) to the person(s) at the email address(es) listed on the service list.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒      **STATE**       I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on February 18, 2022, at Newport Beach, California.

_____
John M. Upton

1

## SERVICE LIST
*Silvia Alfaro v. Zale Delaware, Inc.*

2

3

David D. Bibiyan
4   Jeffrey D. Klein
Diego Aviles
5   Sara Ehsani-Nia
8484 Wilshire Blvd., Suite 500
6   Beverly Hills, CA 90211
Telephone: (310) 438-5555
7   Fax: (310) 300-1705
david@tomorrowlaw.com
8   jeff@tomorrowlaw.com
diego@tomorrowlaw.com
9   sara@tomorrowlaw.com

10

11   *Attorneys for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27