# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

|  |  |
|---|---|
| SILVIA ALFARO, on behalf of herself and all others similarly situated, | Case No.: SACV 22-00266-CJC(ADSx) |
| Plaintiffs, |  |
| v. | **ORDER DENYING PLAINTIFF'S MOTION TO REMAND [Dkt. 12]** |
| BANTER BY PIERCING PAGODA; PIERCING PAGODA; ZALE DELAWARE, INC.; AMANDA HORN; and DOES 1–100, inclusive, |  |
| Defendants. |  |

## I.      INTRODUCTION AND BACKGROUND

Plaintiff Silvia Alfaro initially filed this putative class action against Defendants Zale Delaware, Inc. ("Zale"), Banter by Piercing Pagoda, Piercing Pagoda, Amanda Horn, and unnamed does in Orange County Superior Court.  (Dkt. 1 [Notice of Removal,

hereinafter "NOR"] ¶ 1; Dkt. 1-1, Ex. 1 [State Court Complaint, hereinafter "Compl."].)

Plaintiff alleges that Defendants violated several of California's labor laws and

regulations. (*See* Compl.) On February 8, 2022, Defendant Zale removed the action to

this Court pursuant to the Class Action Fairness Act or "CAFA." (NOR ¶ 4.) Defendant

maintains that the amount in controversy in this action exceeds CAFA's threshold of

$5,000,000. (*Id.* ¶¶ 23–75.) Plaintiff now moves to remand the case, arguing that

Defendant has failed to show that the amount in controversy satisfies CAFA's threshold.

(Dkt. 12 [Plaintiff's Motion to Remand, hereinafter "Mot."].) For the following reasons,

Plaintiff's motion is **DENIED**.[1]

## II.    LEGAL STANDARD AND DISCUSSION

"CAFA provides the federal district courts with 'original jurisdiction' to hear a

'class action' if the class has more than 100 members, the parties are minimally diverse,

and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Standard Fire*

*Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. §§ 1332(d)(2),

(d)(5)(B)). "Congress designed the terms of CAFA specifically to permit a defendant to

remove certain class or mass actions into federal court . . . [and] intended CAFA to be

interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir.

2015). "[N]o antiremoval presumption attends cases invoking CAFA, which Congress

enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee*

*Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

"In order to remove a class action filed in state court to federal court, the defendant

must file 'a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for May 2, 2022, at 1:30 p.m. is hereby vacated and off calendar.

Procedure[,] . . . containing a short and plain statement of the grounds for removal.'"
*Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 962 (9th Cir. 2020) (quoting 28 U.S.C. §
1446(a)).  Where "'it is unclear or ambiguous from the face of a state-court complaint
whether the requisite amount in controversy is pled, the removing defendant bears the
burden of establishing, by a preponderance of the evidence, that the amount in
controversy exceeds the jurisdictional threshold.'"  *Fritsch v. Swift Transp. Co. of Ariz.,
LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (quoting *Urbino v. Orkin Servs. Of Cal., Inc.*, 726
F.3d 1118, 1121–22 (9th Cir. 2013)).

Plaintiff's Complaint does not identify a specific amount in controversy.  (*See*
Compl.)  In such circumstances, a removing party is entitled to make reasonable
assumptions to establish the amount in controversy.  *Ibarra*, 775 F.3d at 1199.
Defendant's NOR asserts that based upon the allegations in Plaintiff's Complaint, and a
declaration submitted from one of Defendant's employees, that the amount in controversy
exceeds $5,000,000.  Specifically, Defendant estimates that $873,100.34 is in controversy
for Plaintiff's failure to pay overtime wages claim.  This estimate assumes that each
employee in the putative class did not receive one hour of unpaid overtime per week
during the class period.  (NOR ¶ 31–38.)  For Plaintiff's failure to provide meal periods
and failure to permit rest periods claims, Defendant assumes two meal period violations
and two rest break violations per work week, for a total of four violations per workweek
per putative class member.  Defendant uses the average hourly rate of the putative class
to calculate damages for these violations, estimating that a total of $2,328,720.72 is in
controversy.  (*Id.*  ¶¶42–46.)  For Plaintiff's failure to reimburse business expenses
claim, Defendant assumes that 50% of an employee's weekly cell phone cost was not
appropriately reimbursed, resulting in an amount in controversy of $424,485.14 across
the class period.  (*Id.* ¶52.)  Defendant also estimates that $322,200.00 is in controversy
for Plaintiff's failure to timely pay wages claim, assuming a 25% violation rate and using
the statutory penalties of $100 for the first violation and $200 for the second violation as

the measure of damages. (*Id.* ¶¶ 53–58.) For Plaintiff's failure to timely pay wages due at termination claim, Defendant assumed a 100% violation rate and estimated that among the class members $1,385,474.40 is in controversy. (*Id.* ¶¶ 59–64.) Defendant also assumed a 100% violation rate for Plaintiff's failure to provide accurate wage statements, placing $743,400 in controversy across the class period. (*Id.* ¶¶ 65–70.) Finally, Defendant estimates that Plaintiff's attorneys' fees will amount to $1,519,345.15, or 25% of the total amount in controversy Defendant estimates for Plaintiff's wage and hour causes of action. (*Id.* ¶ 73.) These estimates total $7,596,725.75. (*Id.*)

Plaintiff's primary argument is that this case should be remanded because Defendant has not submitted sufficient "summary-judgment type evidence" that the amount in controversy is met. (Mot. at 6–7.) But the Ninth Circuit has already foreclosed such arguments when a party launches a facial jurisdictional attack rather than a factual attack. "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyere*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("*Safe Air*")). "For a facial attack, the court, accepting the allegations as true and drawing all reasonable inferences in the defendant's favor, 'determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction.'" *Salter*, 947 F.3d at 964 (quoting *Leite*, 749 F.3d at 1121). "A factual attack, by contrast, 'contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings.'" *Id.* (quoting *Safe Air*, 373 F.3d at 1039). "When a factual attack is mounted, the responding party 'must support her jurisdictional allegations with 'competent proof' . . . under the same evidentiary standard that governs in the summary judgment context.'" *Id.* (internal citation omitted).

Here, Plaintiff only launches a facial attack on Defendant's Notice of Removal. Though Plaintiff asserts that Defendant's amount in controversy calculations are unsupported and speculative, (Mot. at 6–19), Plaintiff offers no evidentiary support for those contentions.  *See Salter*, 974 F.3d at 964 (finding that plaintiff had only made a facial attack on the defendant's notice of removal when plaintiff did not assert that plaintiff "misinterpreted the thrust of his complaint," "did not offer any declaration or evidence that challenged the factual bases of [the defendant's] allegations").  Nor is it accurate that Defendant's amount in controversy calculations are unsupported.  In fact, Defendant submitted a declaration from Reginald Johnson, Senior Vice President, North America Field Human Resources and Chief Diversity Officer for Defendant Zale.[2] (Dkt. 1-4 [hereinafter "Reginald Decl."].)  Mr. Johnson provided a detailed analysis of Defendant's payroll records, the wages paid to putative class members, hours worked, and other information that Defendant used to make reasonable assumptions to calculate the amount in controversy.  (*See id.*)  This kind of evidence has been routinely accepted as competent proof of the amount in controversy.  *See Ibarra v. Manheim Invs. Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2014) (quoting *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) ("[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy a the time of removal.")).

---

[2] Plaintiff objected to Mr. Johnson's declaration which states that Defendants Banter by Piercing Pagoda and Piercing Pagoda are not separate legal entities but simply doing business as the other defendant-entity in this case, Zale.  (Dkt. 12-4 [Plaintiff's Supplemental Evidentiary Objections to Evidence].)  Defendant raises objections based upon California Evidence Code sections 702, 400, 401, 403 and based upon speculation and personal knowledge.  (*Id.*)  But as Defendant correctly notes, the California Evidence Code does not apply in federal court.  (Dkt. 15-3 [Defendant's Response to Plaintiff's Evidentiary Objections]); *see Primiano v. Cook*, 598 F.3d 558, 563 (9th Cir. 2010).  At any rate, Mr. Johnson's declaration does establish that he has the personal knowledge to speak to whether Defendants are separate legal entities or simply doing business as each other through his role as Senior Vice President North America Field Human Resources and Chief Diversity Officer for Defendant Zale Delaware, Inc.

Indeed, Defendant's Notice of Removal need only contain a "'short and plain [statement]" containing plausible allegations that all jurisdictional requirements are met and "need not contain evidentiary submissions" at all. *Dart Cherokee*, 574 U.S. at 84; *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (quoting *Ibarra*, 755 F.3d at 1197-99); *see Muniz v. Pilot Travel Ctrs., LLC*, 2007 WL 1302504, at *7 (E.D. Cal. May 1, 2007) ("There is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages.[.]"). Though both parties "*may* 'submit proof . . . whether the amount-in-controversy requirement has been satisfied,'" a plaintiff is not required to do so. *Salter*, 974 F.3d at 963 (emphasis added).

Defendant went further, however, in response to Plaintiff's challenge by providing additional declarations substantiating the source of the information it used to reach its estimations of the amount in controversy. (*See* Dkts. 1-1 [Declaration of Victoria Ortega]; Dkt. 1-2 [Declaration of Joshua Wulf, hereinafter "Wulf Decl."].) Even with more conservative assumptions applied to Plaintiff's allegations, Defendant has presented evidence to show that there is at least $5,739,978.86 in controversy. For example, to calculate the amount in controversy for Plaintiff's meal period and rest break claims, Defendant assumes a more conservative 25% violation rate based off Plaintiff's allegation that Defendant has "at times" failed to provide putative class members with compliant meal and rest periods. Defendant also only considered shifts that were eligible for such breaks. (Opp. at 12–13; Compl. ¶17; Wulf Decl. ¶¶ 17, 19, 22.) This placed $557,115.84 in controversy for the first missed meal period, $26,996.81 for second meal periods, and $672,850.26 for the first missed rest period. (*Id.*) A 25% violation rate is entirely reasonable considering the plain text of Plaintiff's allegations place some, but not all, of the meal and rest break periods in controversy. *See, e.g., Navarro v. Servisair*, LLC, 2008 WL 3842984, at * 9 (N.D. Cal. Aug. 14, 2008) (assuming three weekly meal period violations was reasonable where the plaintiff "[did] not limit his claim by stating

that only a certain number of hours went uncompensated"); *Stanley v, Distribution Alternatives, Inc*., 2017 WL 6209822, *2 (C.D. Cal. Dec. 7, 2017) (it is reasonable to assume "three missed rest breaks, and three missed meal breaks per week" where the complaint offers no guidance as to the frequency of these violations).  Similarly, more conservative estimates were made for Plaintiff's unpaid overtime claim, amounting to $635,584.32 in controversy.  (Wulf Decl. ¶¶ 15, 16.)

Defendant also explains that it is reasonable for it to assume a 100% violation rate for Plaintiff's wage statement claim, putting in controversy $566,991.18, because Plaintiff provides no suggestion that any wage statement was ever compliant and presents no evidence to the contrary.  (Opp. at 16–18); *Vikram*, 2017 WL 4457575, at *4 (finding reasonable defendant's 100% violation rate assumption because of plaintiff's lack of evidence to the contrary and allegations suggesting the off-the clock work occurred every day).

Plaintiff's attempt to limit the scope of her complaint by pointing to allegations in that state Defendant "at times" violated wage and hour laws or that only "some" class members experienced violations is not compelling.  Indeed, Plaintiff cannot avoid this Court's CAFA jurisdiction through artful pleading.  Such a tactic would essentially eviscerate a defendant's ability to invoke CAFA jurisdiction, contrary to the intent of Congress.  *See Arias*, 936 F.3d at 924 ("Congress intended CAFA to be interpreted expansively.").  And Defendant, no matter how Plaintiff twists the standard of proof involved, "is not required to comb through its records to identify and calculate the exact frequency of violations." *Tajonar v. Echosphere*, 2015 WL 4064642, at *3 (S.D. Cal. July 2, 2015).  Nor can "Plaintiff . . . simply sit silent and take refuge in the fact that it is Defendant's burden to establish the grounds for federal jurisdiction.  This is especially the case since the knowledge in question–how often Plaintiff claims [s]he was made to work overtime [or missed breaks]–is uniquely within Plaintiff's possession." *Patel v. Nike Retail Servs., Inc*., 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014); *see also Moppin v.*

*Los Robles Med. Ctr.*, 2015 WL 5618872, at *3, *5 (C.D. Cal. 2015) (denying remand where plaintiff "offer[ed] no evidence rebutting this violation" rate, despite the opportunity to do so).

In sum, Defendant bases its amount in controversy on reasonable calculations supported by Plaintiff's own complaint and a declaration from Mr. Johnson, who is uniquely situated to speak to the scope of Defendant's employment activities in California. Plaintiff presents absolutely no evidence to rebut those calculations, nor does she persuasively assert that Defendant was required to do more. Accordingly, Defendant has satisfied its burden to invoke CAFA.

## III.        CONCLUSION

For the foregoing reasons, Plaintiffs' motion is **DENIED**.

DATED:    April 29, 2022

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE